## TERRITORY OF ALASKA ex rel. LOWE v. LATHANAN.

### No. 4992.

District Court, Alaska, Fourth Div.
Juneau.

Jan. 29, 1946.

Harry O. Arend, of Fairbanks, for plaintiff.

Julien A. Hurley, of Fairbanks, for defendant.

KEHOE, Judge.

This is an action commenced by the Territory of Alaska on the relation of Grace Lowe against John Allison Lathanan, Jr., an attorney of this court, which seeks to accomplish his disbarment for wilful deceit and misconduct in the practice of his profession.

The complaint alleges that Lathanan, the defendant, in a former action in this court in which he represented Grace Lowe subscribed, swore to and filed in that action a false affidavit for the purpose of procuring an order in the United States Circuit Court of Appeals for the Ninth Circuit enlarging the time within which Grace Lowe as appellant might file therein her transcript of record and docket the cause on appeal. In the affidavit which was filed on the 27th day of February, 1940, Lathanan, the defendant herein, stated, that on the 16th day of October, 1939, the presiding judge in the former action had made an order extending the time to file the bill of exceptions to the 1st day of March, 1940, and also extending the time for filing and docketing the cause in the Court of Appeals to the same date. The complaint further alleges that that portion of the affidavit which states that the presiding judge had extended the time for filing and docketing the case was, and was known to Lathanan to be, false.

The complaint further alleges that Lathanan, sometime subsequent to March 1, 1940, on the strength of said false affidavit, procured from the Court of Appeals an order extending the time within which Grace Lowe might file the transcript of record and docket the cause on appeal in that court to and including the 15th day of July, 1940. It is further alleged that Lathanan failed and neglected to perfect the appeal within the time allowed by law.

As an act of deceit and misconduct on the part of Lathanan the complaint further alleges that sometime subsequent to April 18, 1940, while acting as her attorney he advised Grace Lowe by telegram that she had been enjoined from performing certain work on the property, the title of which was the subject of the former action, and that that statement was, and was known by Lathanan to be, false.

As a further act of deceit and misconduct Grace Lowe alleges that Lathanan employed a disbarred attorney, over her objection, to "handle the appeal in his place and stead," knowing said attorney to have been disbarred.

As a further act of deceit and misconduct Grace Lowe alleges that Lathanan falsely advised her that he had arranged with a San Francisco firm of attorneys to argue the former case on appeal in the Court of Appeals.

In his answer Lathanan admits his employment in the former action by Grace Lowe and that he received $450 from her as a retainer, and that he failed to perfect the appeal within the time allowed by law. He further admits that he advised Grace Lowe that he could secure an extension of time for the perfecting of the appeal and the docketing of the same and would proceed to do so. He further admits making and filing the affidavit of February 27, 1940, for the purpose of procuring an extension of time in which to file and docket the appeal in the former cause, but alleges that he did so through inadvertence and mistake. He also admits procuring an order from the Court of Appeals extending the time to file and docket the cause. He also admits that he knew the disbarred attorney mentioned in the complaint. He denies all other allegations in the complaint.

As an affirmative defense Lathanan alleges that his contract with Grace Lowe in relation to the appeal called for payment by her of a fee of $900 of which she paid $450, refusing to pay the balance. He further alleges that subsequent to January, 1940, he advised Grace Lowe that she would be enjoined from "going on the ground" involved in the former action "and mining the same."

In her reply Grace Lowe denies all the material allegations of the answer.

While the complaint states that it is drawn under the provisions of Chapter 32 of the Session Laws of 1941, in view of Section 32 of that act and of the fact that the deceit and misconduct charged is alleged to have occurred prior to the passage thereof, the Court is of the opinion that the complaint is sufficient under Section 703, Compiled Laws of Alaska 1933.

Section 703, C.L.A. 1933, so far as it applies to this case, reads as follows:

"An attorney may be removed or suspended by the District Court for either of the following causes arising from his admission to practice:  *  *  *

"Third. For being guilty of any wilful deceit or misconduct in his profession."

The question to be determined here is entirely one of the sufficiency of the evidence. As to allegations of deceit and misconduct, that evidence must be clear and convincing. Mere preponderance is not sufficient. State ex rel. Montgomery v. Estes, 105 Or. 173, 209 P. 486. 6 C.J. 607, Note 90, 7 C.J.S., Attorney and Client, § 33.

The evidence is clear that Lathanan was employed by Grace Lowe and that he received $450 from her. The evidence is conflicting as to the exact nature of their contract. Nevertheless he appeared in the cause as her attorney; he filed affidavit in the Circuit Court of Appeals; he did many other acts in connection with the appeal and conducted himself as her attorney over a considerable period of time, in fact from the date of his employment about August, 1939, to sometime in May, 1940. All his actions clearly indicate to the Court that he considered himself Grace Lowe's attorney until he resigned about May, 1940, when a motion was made to dismiss the appeal for want of jurisdiction in the Circuit Court of Appeals. Having acted on the retainer, he may not complain that he was not fully paid, and thus avoid the consequences of his acts.

Lathanan's affidavit of February 27, 1940, in which he swears that the District Judge signed an order on the 16th day of October, 1939, extending the time for the filing and docketing the appeal in the Circuit Court of Appeals to March 1, 1940, is unquestionably false.

Lathanan pleads inadvertence and ignorance of appellate procedure. The fact is not disputed however, that he was fully advised on October 16, 1939, by the District Judge of the steps necessary to perfect the appeal and of the District Judge's belief that he was not authorized to grant an extension of time beyond the 90 days after the filing of the notice of appeal.

506

The District Judge's testimony is as follows:

"Q. State your name, please. A. Harry E. Pratt.

"Q. You are the district judge for the district court for the Territory of Alaska, Fourth Judicial Division? A. Yes.

"Q. How long have you held that office, Judge Pratt? A. Over ten years.

"Q. I show you Plaintiff's Exhibit 'A', purporting to be the files and records in the office of the clerk of the court for this Division in the case of Luther C. Hess v. Grace Lowe. Are you familiar with that file? A. Yes.

"Q. The files and records in that case, Judge Pratt, show that on the 16th day of October, 1939, you made and filed an order extending the time for filing and docketing the cause in the United States Circuit Court of Appeals for the Ninth Circuit until January 8, 1940. At the time you signed that order, did you discuss the matter with the appellant's attorney, Mr. Lathanan? A. Yes.

"Q. What was said at that time? A. Well, he wanted * * * I think he wanted the time extended to the first of March, as I recall it, for docketing the cause, and I told him that it was very doubtful if I had any authority to make an extension of more than ninety days from the filing of the notice of appeal. I told him that in the Sakow case, which we tried the winter before, I had made an order extending the time one hundred and five days for docketing the cause. I had done that at the instance of the attorneys who felt very sure that that didn't come under the rule limiting the court's authority to ninety days. I told him further that the other side had filed a motion to strike out the record, because it wasn't filed in time, and, in my opinion, the safe way to do it was for him to take his order to file it within the ninety days, and he agreed with me that that was what he wanted to do. The calendar was there and I looked up at the calendar and figured out when the ninety days from his notice of appeal would be. He had filed a notice of appeal then and had filed a petition for appeal, but in order to be absolutely safe, I took the notice of appeal and figured out when that ninety days would be up, and it fell on the 8th of January, and I put that in the order.

"Q. Were you approached at any later time to grant an order further extending the time to docket the appeal in San Francisco? A. Well, now, I have no recollection of his ever mentioning it to me. Of course, the normal way would be for him, if he wanted an extension and wanted any papers signed, to leave them with the clerk of the court and for the clerk of the court to bring them in to me. The clerk may have done so, but it wasn't impressed on my mind. I don't think that he was ever around again, though.

"Q. Did you ever sign an order granting an extension? A. For docketing?

"Q. For docketing, yes, your Honor. A. No.

"Q. Now, I believe you were gone from your district during the winter of 1939-1940? A. Yes.

"Q. When did you return? A. I got back on—I was in my office on the 18th of February. I think I got back the night before, Saturday night, the 17th of February, 1940.

"Q. When did you leave? A. I left on the 19th of October, 1939.

"Q. Now, the files in that case, Plaintiff's Exhibit 'A', show that on the 17th of October, 1939, you signed and filed an order extending the time for filing the Bill of Exceptions to March 1, 1943 (sic). A. Yes.

"Q. And allowing the appellee fifteen days after the filing of the Bill of Exceptions to file objections, is that right? A. Yes.

"Q. Did you make any provision for any other judge to settle the bill of exceptions in case that procedure was ready during your absence? A. No.

"Q. Can you state how that might be accomplished during your absence? A. Well, yes. Just as soon as the fifteen days were up and there were no objections filed to the proposed bill, it could have been transmitted to the judge in the Third Division. The law provided, at that time, that the Attorney-General could designate a

judge of another division. Just by writing the Attorney-General, he could have gotten it referred to the judge of the Third Division. The bill of exceptions was filed on the 17th of October—just about that very time—and the fifteen days for the opposing party to object would have been up by the 2nd of November, and it could have been sent right over to Anchorage and signed up immediately.

"Q. Now, Judge Pratt, this case of Luther C. Hess against Grace Low, No. 4192, which you have there, Plaintiff's Exhibit 'A', was a partition suit regarding some mining property on Gertrude Creek in the Fourth Division of Alaska. If there had been an injunction gotten out by the appellee to prevent the appellant from going upon the ground, would that have been a part of this record? A. I think it would have been a new case.

"Q. And to your knowledge was there ever an injunction suit filed by the plaintiff Hess against the defendant Grace Lowe, growing out of this partition suit? A. I know of none, but I haven't made an examination of the records."

In view of this testimony, which is uncontroverted, may the defendant properly plead either inadvertence or ignorance. The Court thinks not.

Lathanan conferred and advised with his client over a period of some months. On April 18, 1940, Grace Lowe requested him to inform her whether she could "work Gertrude Creek this Spring". He replied by telegram as follows:

"Referees Return Of Sale Never Filed Stop Injunction Against Your Working Allowed Stop No Extra Copies Of Transcript Available Stop Have Until May Fifteenth To File And Docket Appeal Stop Taylor Outside So Cannot Settle Bill Of Exceptions Until He Returns Stop Arranged For Attorney In Frisco To Handle Argument

J A Lathanan Jr"

Lathanan knew no injunction was issued. He so testified. Furthermore, it is the belief of this Court that had he been diligent he would have known on that date that he failed in his duty to his client in that he had not perfected his appeal and,

therefore, he should not have advised her that it was proceeding properly as he did in that telegram.

He testifies that he intended to say in that telegram that an injunction against her "working the ground would be allowed". He further intimates that an error might have been made in the wording in typing or transcribing it. If the error was made in transcribing it, that is, if the telegraph office made such an error, Lathanan's office copy thereof would be acceptable as some evidence of the fact, but the copy was not produced, and, as far as the record shows, no attempt was made to produce it.

Other matters charged need not be noticed, as the Court is of the opinion, as above indicated, that Lathanan is guilty of acts of wilful deceit and misconduct, is subject therefor to disciplinary action by the Court, and that he should be suspended as an attorney and officer of the court for the period of one year from the date of the Court's judgment. The plaintiff is entitled to her costs to be taxed by the Clerk. Let findings and judgment be entered accordingly.